UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


T. RANDOLPH RICHMOND, JR., ET AL.                CIVIL ACTION
                                                 No. 06-3973
VERSUS

CHUBB GROUP OF INSURANCE
COMPANIES, ET AL.                                SECTION:  I/1


ORDER AND REASONS

Before the Court are dual motions to remand filed on behalf of plaintiffs, R. Randolph Richmond, Jr., and Robin B. Richmond. For the following reasons, plaintiffs' motions to remand are **GRANTED.**

*BACKGROUND*

Plaintiffs, R. Randolph Richmond, Jr. and Robin R. Richmond ("the Richmonds"), own a home located at 601 Northline in Jefferson Parish.  On August 29, 2005, the home suffered damage far in excess of $250,000 due to the floodwaters that inundated New Orleans following Hurricane Katrina.[1]

For many years prior to August 29, 2005, defendants Eustis Insurance, Inc. ("Eustis") and/or Bruce Nesbitt ("Nesbitt") sold various home insurance policies to the Richmonds.  These policies included a flood insurance policy covering their dwelling issued through American Bankers Insurance Company of Florida in the

---

[1]Rec. Doc. No. 1-2, pp. 1-2.

amount of $250,000, which was in effect on August 29, 2005.[2]

Plaintiffs maintain neither Eustis nor Nesbitt ever informed or offered them excess flood insurance for their home. It is alleged that neither defendant ever advised them to secure contents coverage under their flood policy. According to plaintiffs, had they known of or been offered excess flood insurance and contents coverage, they would have purchased such excess insurance to fully cover their home and contents which were worth millions of dollars.[3]

Plaintiffs also secured a homeowner's policy from Chubb Group of Insurance Companies ("Chubb"), and/or Great Northern Insurance Company ("Great Northern"), which was in effect on August 29, 2005. Plaintiffs allege that Chubb and/or Great Northern have paid only a small portion of damages covered under their homeowner's policy and have arbitrarily and capriciously denied plaintiffs' claim for losses.[4]

On June 21, 2006, seeking consequential, contractual, and delictual damages, plaintiffs filed this lawsuit against defendants in the 24th Judicial District Court for the Parish of Jefferson.[5] Eustis and Nesbitt removed the case to federal court on July 27,

---

[2]Rec. Doc. No. 1-2, p. 1

[3]Rec. Doc. No. 1-2, p. 2.

[4]Rec. Doc. No. 1-2, p. 2.

[5]Rec. Doc. No. 1-2, p. 1.

2006.[6]  Great Northern, for itself and Chubb, removed the case by separate motion on July 27, 2006.[7]  In their notice of removal, defendants assert that federal jurisdiction is appropriate pursuant to 28 U.S.C. § 1331 because a federal question exists.

According to defendants, plaintiffs' claim involves an interpretation of a standard flood insurance policy ("SFIP") issued by an independent, "Write-Your-Own" insurance provider ("WYO") as part of its participation in the national flood insurance program ("NFIP").  Defendants contend that, since NFIP claims are exclusively governed by federal law, plaintiffs' claims arising out of the SFIP are preempted.[8]  Additionally, defendants argue that Eustis and Nesbitt were improperly joined and, therefore, there is diversity jurisdiction.[9]  Plaintiffs filed their motions to remand on August 15, 2006.[10]

### LAW AND ANALYSIS

### I. Standard of Law

### A.  Motion to Remand

---

[6]Rec. Doc. No. 1-1.

[7]Civ. Action No. 06-3982, Rec. Doc. No. 1-1.  On August 14, 2006, the Richmonds' case against Great Northern and Chubb was consolidated by the Court with the case against Eustis and Nesbitt.  Civ. Action No. 06-3982, Rec. Doc. No. 4.

[8]Rec. Doc. No. 11-1, pp. 1-4.

[9]Rec. Doc. No. 12-1, p. 1.

[10]Rec. Doc. No. 7-1 (seeking remand against Eustis and Nesbitt); Rec. Doc. No. 8-1 (seeking remand against Chubb and Great Northern).

A district court must remand a case to state court if, at any time before final judgment, it appears that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c). The removal statute is strictly construed. *Sea Robin Pipeline Co. v. New Medico Head Clinic Facility*, No. 94-1450, 1995 U.S. Dist. LEXIS 12013, at *2 (E.D. La. Aug. 14, 1995) (Clement, J.) (quoting *York v. Horizon Fed. Sav. & Loan Ass'n*, 712 F. Supp. 85, 87 (E.D. La. 1989) (Feldman, J.)). When challenged by a plaintiff seeking remand, the defendant attempting to establish removal bears the burden of proof. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S. Ct. 35, 37, 66 L. Ed. 144 (1921); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res.*, 99 F.3d 746, 751 (5th Cir. 1996) ("A party invoking the removal jurisdiction of the federal courts bears a heavy burden."). Doubts concerning removal are to be construed against removal and in favor of remand to state court. *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citation omitted).

B.  *Federal Question Jurisdiction*

The original jurisdiction alleged by defendants is federal question jurisdiction--i.e., the case is one "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Accordingly, "it is well settled that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Heimann v. Nat'l*

*Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir. 1999);
*see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.
Ct. 2425, 2429, 96 L. Ed. 2d 318 (1987) (stating that subject
matter jurisdiction exists "when a federal question is presented
on the face of the plaintiff's properly pleaded complaint").


*C.  Improper Joinder*

There are two ways to establish improper joinder: (1) actual
fraud in the pleading of jurisdictional facts, or (2) inability
of the plaintiff to establish a cause of action against the non-
diverse party in state court.  *Smallwood v. Ill. Cent. R.R.,* 385
F.3d 568, 573 (5th Cir. 2004) (en banc).[11]  In *Smallwood v.*
*Illinois Central Railroad*, the United States Court of Appeals for
the Fifth Circuit restated the law with respect to the second
method of establishing improper joinder:

> [T]he test for fraudulent joinder is whether the
> defendant has demonstrated that there is no possibility
> of recovery by the plaintiff against an in-state
> defendant, which stated differently means that there is
> no reasonable basis for the district court to predict
> that the plaintiff might be able to recover against an
> in-state defendant.  To reduce possible confusion, we
> adopt this phrasing of the required proof and reject all
> others, whether the others appear to describe the same
> standard or not.
>
> There has also been some uncertainty over the proper
> means for predicting whether a plaintiff has a reasonable
> basis of recovery under state law.  A court may resolve

---

[11] The majority opinion in *Smallwood* adopted the term "improper joinder"
in lieu of the term "fraudulent joinder."  *Smallwood*, 385 F.3d at 571 n.1.

> the issue in one of two ways.  The court may conduct a
> Rule 12(b)(6)-type analysis, looking initially at the
> allegations of the complaint to determine whether the
> complaint states a claim under state law against the in-
> state defendants.  Ordinarily, if a plaintiff can survive
> a Rule 12(b)(6) challenge, there is no improper joinder.
> That said, there are cases, hopefully few in number, in
> which a plaintiff has stated a claim, but has misstated
> or omitted discrete facts that would determine the
> propriety of joinder.  In such cases, the district court
> may, in its discretion, pierce the pleadings and conduct
> a summary inquiry.

385 F.3d 568, 573 (5th Cir. 2004) (citing *Travis v. Irby*, 326

F.3d 644, 648 (5th Cir. 2003)) (footnotes omitted).

The "burden of persuasion placed upon those who cry

'fraudulent [or improper] joinder' is indeed a heavy one." *B.,*

*Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981).

In determining the validity of an improper joinder claim, "the

district court 'must evaluate all of the factual allegations in

the light most favorable to the plaintiff, resolving all

contested issues of substantive fact in favor of the plaintiff.'"

*Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995)

(quoting *B., Inc.,* 663 F.2d at 549).  The court must also resolve

all ambiguities in the controlling state law in plaintiff's

favor.  *Id.*

## II. Discussion

*A. Federal Question Jurisdiction*

Plaintiffs argue that the Court lacks federal question

jurisdiction over this action because their claims arise out of

state law and they are not preempted by federal law.  Plaintiffs
contend that courts in this circuit recognize a distinction
between those state law claims that concern the "handling" of a
flood insurance policy, which are preempted, and those claims
that relate to negligence in the procurement of such a policy,
which are not preempted.  Plaintiffs assert that their claims
fall within the latter category and, therefore, are more
appropriately before a state court.[12]

The NFIP was established by the National Flood Insurance Act
("NFIA"), 42 U.S.C. § 4001, *et seq.*, and it is administered
through the Federal Emergency Management Agency ("FEMA"), *Wright
v. Allstate Ins. Co.*, 415 F.3d 384, 387 (5th Cir. 2005).  The
NFIP has two main components:  1) the flood insurance program,
and 2) a comprehensive national plan for flood management.
*Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 342  (5th
Cir. 2005).  A  SFIP can be issued by the private WYOs directly
to consumers.  *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir.
1998).  These WYO companies, however, have no power to alter,
amend, or waive any provision contained within the SFIP.  44

---

[12]Rec. Doc. No. 7-2, pp. 3-4.  The Supremacy Clause of the United States
Constitution provides Congress with the power to preempt a state statute where
it conflicts with federal law.  U.S. Const. art. VI, cl. 2.  The United States
Supreme Court, however, has instructed that this preemption should only be
effected where it is "the clear and manifest purpose of Congress."  *Rice v.
Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S. Ct. 1146, 1152, 91 L. Ed.
1447 (1947).  A state law may be preempted either by express provision, by
implication, or by a conflict between federal and state law.  *Lorillard
Tobacco Co. v. Reilly*, 533 U.S. 525, 537, 121 S. Ct. 2404, 2412, 156 L. Ed. 2d
34 (2001).

C.F.R. pt. 61.13(d).  By statute, these WYOs are considered
fiscal agents of the United States.  42 U.S.C. § 4071(a)(1).

In *West v. Harris*, 573 F.2d 873, 881 (5th Cir. 1978), the
Fifth Circuit denied a motion to remand in a claim for attorney's
fees under a flood insurance plan.  *Id*.  The Court reasoned that
the flood insurance program was a "child of Congress . . . and
[because] the federal government participates extensively in the
program . . . it is clear that the interest in uniformity of
decision present in this case mandates the application of federal
law." *Id*.

In *Spence v. Omaha Indemnity Insurance Company,* 996 F.2d 793
(5th Cir. 1993), however, the Fifth Circuit first stated that
some state law tort claims, based on misrepresentation, would not
be preempted.  The court determined that "[w]hile the national
policies underlying the NFIP and extensive federal role therein
impel our conclusion that federal common law governs claims under
flood insurance policies, the same does not apply in actions for
tortious misrepresentation against WYO insurers." *Id.* at 796
(footnote omitted).

As a result of *Spence*, confusion developed in this area
as to when state law tort claims based on misrepresentation would
be preempted.  In *Wright v. Allstate Ins. Co.*, the Fifth Circuit
noted that other courts, including the Fifth Circuit, have
distinguished between "procuring" and "handling" insurance

claims, as well as claims tied to the contract and extracontractual tort claims.  415 F.3d 384, 389 (5th Cir. 2005) (holding that state law claims based on the WYO's handling of the insurance claim are preempted by federal law).

While the Fifth Circuit has not definitively ruled on whether procurement claims are preempted by federal law, lower courts have repeatedly held that state law claims are not preempted in procurement cases. *Jones v. State Farm Fire & Cas. Co.*, 2006 WL 2359777, at *2-4 (S.D. Miss. Aug. 15, 2006)(Senter, J); *Seruntine v. State Farm & Cas. Co.*, 2006 WL 2361641, at *2-5 (E.D. La. Aug. 7, 2006)(Vance, J); *Bramlett v. State Farm Fire & Cas. Co.*, 2006 WL 2243186, at *4-6 (S.D. Miss. Aug. 4, 2006)(Senter, J.); *Sullivan v. State Farm Cas. Co.*, 2006 WL 2119320, *3-4 (E.D. La. July 27, 2006)(Barbier, J); *Jeffrey v. Ins. Underwriters, LTD*, 2006 WL 1984591, at *1-2 (E.D. La. July 7, 2006)(McNamara, J.); *Cosse v. Matte*, 2006 WL 1968868, at *1-2 (E.D. La. July 7, 2006)(McNamara, J.); *Landry v. State Farm Fire & Cas. Co.*, 428 F. Supp. 2d 531, 534-36 (E.D. La. 2006) (Fallon, J.).

In response to plaintiffs' motion, defendants argue, "Plaintiffs' sole claim is that defendants either failed to inform them of specific terms of the NFIP or misrepresented the terms of the NFIP, thereby placing the terms of the NFIP directly

at issue."[13]  Defendants contend that these claims, therefore, require an interpretation of the terms of the NFIP and SFIP and, therefore, arise under federal law.

In their complaint, plaintiffs state that they were never "informed of or in any way offered excess flood insurance for their home, nor were the[y] advised to secure contents coverage under this flood policy."[14]  Plaintiffs' claims are related not to the eventual handling of their insurance claim, but to the initial procurement of their policy; no interpretation of the NFIP or SFIP is implicated.

After citing *Wright*,[15] defendants attempt to analogize to *AAA-R, Inc. v. Bankers Insurance Co.*, 2005 U.S. Dist. LEXIS 10329 (E.D. La. May 20, 2005) (Berrigan, J.), a case in which the Court applied federal law to a dispute arising out of a SFIP. Defendants claim that because Judge Berrigan did not discuss the handling/procurement dichotomy in reaching her decision, this case weighs in favor of finding preemption in the instant case.

In *Bankers Insurance*, the plaintiff brought claims against

---

[13]Rec. Doc. No. 11-1, p. 9.

[14]Rec. Doc. No. 1-2, p. 2.

[15]Defendants argue that *Wright* establishes, "If the terms of the SFIP are at issue, the claim is preempted by federal law."  Rec. Doc. No. 11-1, p. 5.  However, the Court has found that the terms of the SFIP are not at issue here because this claim centers on the initial procurement of a policy. *Wright* recognizes the validity of this handling versus procurement distinction.   *Wright*, 415 F.3d at 389.

-10-

his insurance agent after his claim pursuant to a SFIP was denied by the defendant insurance company.  2005 U.S. Dist LEXIS 10329, at *3-4.  The plaintiffs' allegations, however, concerned the defendant agent's representations to them regarding the filing of their proof of loss.  The facts in *Bankers Insurance* relate to the handling of the SFIP, not to its procurement, and citation to that case is not helpful.  Likewise, *Richmond Printing* and its progeny deal with handling claims and, therefore, are also not helpful.[16]

Defendants also argue that the 2000 FEMA amendment to the SFIP governing statute should be interpreted so as to preempt all state law claims, not just those related to claim handling.[17] The 2000 amendment indicates that federal law will apply to the "policy and all disputes arising from the handling of any claim."[18]  Other courts have considered this language and found it inapplicable to claims relating to SFIP procurement, *see, e.g.*, *Landry*, 428 F. Supp. 2d at 535; *Corliss*, 2004 U.S. Dist. LEXIS 25664, at *8, and this Court concurs.

Defendants also cite to language from FEMA expounding on the

---

[16]Defendants cite to *Richmond Printing LLC v. Dir. Fed. Emergency Mgmt. Agency*, 72 F.App'x 92 (5th Cir. 2003), and two Eastern District of Louisiana cases that cite it. Rec. Doc. No. 11-1, p. 8.  *Richmond Printing* involved a proof of loss dispute, which is a claims handling issue.  72 F.App'x at 97.

[17]Rec. Doc. No. 11-1, pp. 6-7.

[18]44 C.F.R. pt. 61, App. A(1), art. IX.

2000 amendment.  Defendants quote FEMA's statement that the amendment was meant to "emphasize that matters pertaining to the Standard Flood Insurance Policy, including issues relating to and arising out of claims handling, must be heard in Federal court and are governed exclusively by Federal law."  65 Fed. Reg. 34824, 34827.  Defendants omit, however, an earlier sentence, which reiterates that the purpose behind the 2000 amendment was "the need for uniformity in the interpretation of and standards applicable to" flood insurance.  *Id.* at 34825-27.  This language does not suggest any attempt by FEMA to federalize state law negligence claims that relate to the procurement of SFIPs.  To the contrary, the agency's reference to "claims handling" and its focus on the "interpretation" of flood insurance supports the continued application of the claims handling/procurement distinction.

*B. Diversity Jurisdiction and Improper Joinder*

Defendants allege that there is diversity jurisdiction in this case because defendants Eustis and Nesbitt, Louisiana residents, have been improperly joined to destroy complete diversity.  Specifically, defendants allege: 1) plaintiffs' claims against Eustis and Nesbitt are prescribed; 2) there is no fiduciary duty to plaintiffs' on which to base a claim; and 3)

the claims against Eustis and Nesbitt are misjoined.[19]  As will
be explained, defendants' assertions are incorrect and the Court
lacks diversity jurisdiction.

First, defendants allege that plaintiffs' claim against
Eustis and Nesbitt is barred under La. R.S. 9:5606.[20]  Defendants
argue the statute is applicable to Eustis and Nesbitt and, since
the Richmonds initially purchased their flood policy in 2000, the
three-year peremptive period under La. R.S. 9:5606 has run.[21]

As stated, to determine if joinder is improper, the Court
must decide whether plaintiffs have a reasonable basis of
recovery under state law. The Court begins with a Rule
12(b)(6)-type analysis, looking initially at the allegations of
the complaint to determine whether the complaint states a claim

---

[19]Rec. Doc. No. 12-1, pp. 2-3.

[20]La. R.S. 9:5606 provides in pertinent part:
A. No action for damages against any insurance agent, broker,
solicitor, or other similar licensee under this state, whether
based upon tort, or breach of contract, or otherwise, arising out
of an engagement to provide insurance services shall be brought
unless filed in a court of competent jurisdiction and proper venue
within one year from the date of the alleged act, omission, or
neglect, or within one year from the date that the alleged act,
omission, or neglect is discovered or should have been discovered.
However, even as to actions filed within one year from the date of
such discovery, in all events such actions shall be filed at the
latest within three years from the date of the alleged act,
omission, or neglect.

C. The peremptive period provided in Subsection A of this Section
shall not apply in cases of fraud, as defined in Civil Code
Article 1953.

[21]Under Louisiana law, "Peremption is a period of time fixed by law for
the existence of a right. Unless timely exercised, the right is extinguished
upon the expiration of the peremptive period."  La. Civ. Code art. 3458.

under state law against the in-state defendants.  *Smallwood v. Ill. Cent. R.R.,* 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

Plaintiffs allege that defendants never informed nor offered them excess flood insurance for their home, nor advised them to secure contents coverage under their flood policy.  According to plaintiffs, had they known of, or been offered, excess flood insurance and contents coverage, they would have purchased such excess insurance.[22]  However, plaintiffs do not state when this omission occurred and, therefore, this Court cannot determine whether the peremptive period to file their claim has expired.[23]

---

[22] Rec. Doc. No. 1-2, p. 2.

[23] While this Court may, in its discretion, pierce the pleadings to conduct a summary inquiry on this issue, such inquiry is "only appropriate to identify the presence of discrete and undisputed facts." *Smallwood*, 385 F.3d at 573. Since plaintiffs allege "at no time whatsoever during the insurance business dealings" were they offered or advised of such insurance, they clearly dispute that the omission occurred only once, during the purchase of the original policy in 2000.  Therefore, this Court will not pierce the pleadings to conduct a summary inquiry.

Additionally, defendants argue that, under Louisiana law, the peremption clock must run from the date of the original policy and it is unaffected by policy renewals.  Rec. Doc. No. 12-1, p. 6.  However, under Louisiana law, the date from which peremption runs depends on a factual determination as to the timing and nature of the particular tortious acts.  In *Biggers v. Allstate Ins. Co.*, 886 So.2d 1179 (La. Ct. App. 5th Cir. 2004), the Court held that the peremption period ran from the date of the original policy because the policy terms were set at that time and, after the initial error involving the issuance of the original policy, there was no further occasion for misrepresentation.  *Id.* at 1182-83.  However, in *Sonnier v. La. Farm Bureau Mut. Ins. Co.*, 924 So.2d 419 (La. Ct. App. 3d Cir. 2006), the plaintiffs alleged that each year their agent told them that no replacement cost coverage was available.  *Id.* at 420.  *Sonnier* held that these yearly alleged misrepresentations by the agent constituted separate actions for purposes of the peremption period and, therefore, plaintiffs' claims were not perempted based on the original policy date.  *Id.* at 422.  Since the timing and nature of the tortious acts here are disputed and the petition is unclear with respect to such issue, this Court must resolve the disputed facts in plaintiffs' favor and conclude that plaintiffs' claims have not been perempted under Louisiana law.

-14-

Since the Court must resolve all contested issues of substantive fact in plaintiffs' favor, the defendants have not proved improper joinder by peremption. *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) (quoting *B., Inc.,* 663 F.2d at 549); *see also Schwartz v. Chubb & Sons, Inc.*, 2006 WL 980673, at *3 (E.D. La. Apr. 11, 2006) (Fitzwater, J.) (holding same).

Second, defendants argue improper joinder because Eustis and Nesbitt owed no fiduciary duty to plaintiffs on which they can base a claim. Defendants recite a litany of possible theories that plaintiffs could assert based on their complaint and purported reasons why those claims must fail on their face. Rec. Doc. No. 12-1, pp. 8-11. This Court must determine whether there is any "reasonable basis ... to predict that the plaintiff might be able to recover." *Smallwood,* 385 F.3d at 573.

"Louisiana law in certain instances imposes a fiduciary duty on insurance agents in their dealings with the insured." *Taylor v. Sider,* 765 So. 2d 416, 419 (La. Ct. App. 4th Cir. 2000). In *Taylor*, plaintiff essentially alleged that, had she been fully informed of the law and insurance coverage options, she may have opted for a different type of coverage. *Taylor* held, "plaintiff has adequately asserted a cause of action against defendants as to the insurance agent's duty in procuring this insurance and

-15-

informing the insured of the policy limitations and exclusions."
*Id.*[24]

Moreover, in *Durham v. McFarland*, the Court held that an
insurance broker's "fiduciary duty includes advising his client
with regards to recommended coverage."  527 So. 2d 403, 405 (La.
Ct. App. 4th Cir. 1988).  *Durham* upheld the trial court's finding
that the insurance broker was liable for failing to properly
advise plaintiff of the need to secure flood insurance.  *Id.*
Given that plaintiffs in the present case make similar
allegations, this Court concludes that there is a reasonable
basis to predict that plaintiffs might be able to recover against
Eustis and Nesbitt.  Therefore, there is no improper joinder for
inability to establish a cause of action against the in-state
defendants.

Finally, defendants assert that plaintiffs' claims against
Eustis and Nesbitt are misjoined under the doctrine pronounced in
*Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996),
which held that misjoinder of the parties under Fed. R. Civ. Pro.
20 may be a basis for finding fraudulent joinder[25] if

---

[24]The facts in *Taylor* can be distinguished in certain respects from the
facts in this case.  Notwithstanding, a review of some of the Court's language
in *Taylor* persuades this Court that there is a reasonable basis to predict
that the plaintiff might be able to recover.

[25]In *Smallwood*, the Fifth Circuit adopted the term "improper joinder"
instead of "fraudulent joinder", "[a]lthough there is no substantive
difference between the two terms."  *Smallwood*, 385 F.3d at 571 n.1.

particularly egregious.[26]  Rec. Doc. No. 12-1, p. 12.   In
*Schwartz v. Chubb & Sons, Inc.*, the Court addressed this precise
issue.  2006 WL 980673, at *4 (E.D. La. April 11, 2006). *Schwartz*
found that this type of fraudulent joinder may not be recognized
in the Fifth Circuit.  *Id.* (noting that *Smallwood* only identifies
two types of improper joinder, actual fraud and inability to
establish a cause of action).  Moreover, *Schwartz* found that
plaintiffs' claims, even if problematic under Rule 20, would not
constitute fraudulent joinder under *Tapscott*.  *Id.* at *5.

        This Court concurs with the reasoning and analysis of
*Schwartz*.  *Tapscott* may not be a recognized type of improper
joinder in the Fifth Circuit.  Even if it is, and assuming
*arguendo* that there is Rule 20 misjoinder, plaintiffs' joinder of
Eustis and Nesbitt would not be "so egregious as to constitute
fraudulent joinder."[27]  *Tapscott*, 77 F.3d at 1360.  Therefore,
there is no improper joinder on this basis and the Court lacks
subject matter jurisdiction over this case.[28]

_____

        [26]"We do not hold that mere misjoinder is fraudulent joinder, but we do
agree ... that Appellants' attempt to join these parties is so egregious as to
constitute fraudulent joinder."  *Tapscott*, 77 F.3d at 1360.

        [27]Plaintiffs here allege that Great Northern failed to fully pay their
claim for loss for damages from Hurricane Katrina and that Eustis and Nesbitt
breached their fiduciary duty and/or were negligent in failing to properly
inform plaintiffs of the available insurance coverages that could have
provided full reimbursement for their losses by supplementing what is properly
covered by their existing policy.

        [28]Moreover, the relevant question is not whether plaintiffs properly
joined Eustis and Nesbitt under Rule 20(a) but whether they were properly
joined under Louisiana law. If Great Northern has a basis under Louisiana law

## III.   Request for Attorneys' Fees

In their memorandum in support of their motion to remand, plaintiffs request attorneys' fees and costs for defendants' improper removal.[29]  The decision whether to award fees and costs is discretionary. *Miranti v. Lee*, 3 F.3d 925, 929 (5th Cir. 1993).  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, ---U.S. ----, 126 S. Ct. 704, 711, 163 L. Ed. 2d 547 (2005) (citing Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 541 (5th Cir.2004)); Valdes v. Wal-Mart Stores, Inc., 199 F.3d 290, 293 (5th Cir.2000)).  This Court exercises its discretion not to grant plaintiffs' request for attorneys' fees and costs.

Accordingly,

**IT IS ORDERED** that the motions to remand filed on behalf of plaintiffs, R. Randolph Richmond, Jr., and Robin B. Richmond,[30]

---

to establish that it has been improperly joined with Eustis and Nesbitt, Great Northern can seek a severance in state court after the case has been remanded. If the severance is granted, and assuming that removal is still timely, Great Northern can then remove the case on the ground that it was not initially removable but became removable. *Schwartz*, at *5 (citing *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006)).

[29]Rec. Doc. No. 7-2, p. 5.

[30]Rec. Doc. No. 7-1; Rec. Doc. No. 8-1.

are **GRANTED** and the case is **REMANDED** to the 24th Judicial

District Court for the Parish of Jefferson.

New Orleans, Louisiana, September ___20th___, 2006.

_____
        LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE